LORETTA E. LYNCH
Attorney General

VANITA GUPTA
Principal Deputy Assistant Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM
Chief
JON S. SEWARD
Deputy Chief
RONALD H. LEE
Trial Attorney
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Avenue, N.W.
Northwestern Building, 7th Floor
Washington, DC 20530
Tel: (202) 616-1892

PAUL J. FISHMAN
United States Attorney
MICHAEL E. CAMPION
Assistant United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
Tel. (973) 645-3141

PATRICE ALEXANDER FICKLIN
Fair Lending Director
REBECCA J. K. GELFOND
Deputy Fair Lending Director
JEFFREY BLUMBERG
Senior Fair Lending Enforcement Counsel
MICHAEL POSNER
Fair Lending Enforcement Counsel
CHARLES NIER
Senior Counsel
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
Tel: (202) 435-9687

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, and UNITED STATES OF AMERICA<br><br>Plaintiffs,<br><br>v.<br><br>HUDSON CITY SAVINGS BANK, F.S.B.<br><br>Defendant. | Case No.<br><br>**COMPLAINT** |

## INTRODUCTION

1.  Plaintiffs the Consumer Financial Protection Bureau ("Bureau") and the United States bring this action against Hudson City Savings Bank, F.S.B. ("Hudson City" or "Bank") under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691-1691f, and the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619, for engaging in a pattern or practice of unlawful redlining by structuring its business so as to avoid the credit needs of majority-Black-and-Hispanic neighborhoods in its residential mortgage lending, and thereby engaging in acts or practices directed at prospective applicants that discouraged applicants in these neighborhoods from applying for credit.

2.  ECOA and FHA prohibit creditors from discriminating on the basis of, among other characteristics, race, color, and national origin in their residential mortgage lending practices. ECOA and its implementing regulation, Regulation B, 12 C.F.R. pt. 1002, make it illegal for a creditor to discriminate against an applicant in any aspect of a credit transaction on the basis of, among other characteristics, race, color, and national origin. 15 U.S.C. § 1691(a); 12 C.F.R. § 1002.4(a). ECOA and

2

Regulation B also prohibit any statements, acts, or practices that would or could discourage on a prohibited basis a prospective applicant from applying for credit. 15 U.S.C. § 1691(a); 12 C.F.R. § 1002.4(b); 12 C.F.R. pt. 1002, Supp. I, ¶ 1002.4(b)(1). FHA makes it unlawful for any bank to discriminate against any person in making available residential mortgage loans on the basis of, among other characteristics, race, color, and national origin. 42 U.S.C. § 3605(a).

3. In March 2014, the Bureau began an examination of Hudson City to review whether the Bank had engaged in unlawful redlining. In March 2015, the United States opened an investigation into whether the Bank had engaged in unlawful redlining and commenced a joint investigation with the Bureau of Hudson City's lending practices. Hudson City was referred by the Bureau to the DOJ pursuant to ECOA, 15 U.S.C. § 1691e(g).

4. Hudson City engaged in unlawful redlining throughout its lending footprint by discouraging applicants in majority-Black-and-Hispanic neighborhoods in at least three Metropolitan Statistical Areas ("MSAs"): New York-Northern New Jersey-Long Island, NY-NJ-PA ("NY/NJ MSA"), Philadelphia-Camden-Wilmington, PA-NJ-DE ("Camden MSA"), and Bridgeport-Stamford-Norwalk, CT ("Bridgeport MSA"). Hudson City generates the vast majority of its mortgage loan applications for properties within these three MSAs.[1] In 2012, for example, Hudson City drew over 90 percent of its mortgage loan applications for properties within these three MSAs, with 71 percent from the NY/NJ MSA, 13 percent from the Bridgeport MSA, and 7 percent from the Camden MSA.

---

[1] For purposes of this Complaint, we define "mortgage loan applications" as all applications that Hudson City was required to report under the Home Mortgage Disclosure Act, 12 U.S.C. §§ 2801 – 2810.

5. Hudson City's policies and practices that discouraged consumers in majority-Black-and-Hispanic census tracts from applying for credit from Hudson City include but are not necessarily limited to placing its branches and loan officers principally outside of majority-Black-and-Hispanic neighborhoods, excluding many majority-Black-and-Hispanic neighborhoods from its Community Reinvestment Act assessment area and one of its low-to-moderate income loan programs, selecting mortgage brokers that are mostly located outside of, and do not effectively serve, majority-Black-and-Hispanic neighborhoods, and focusing its limited marketing in neighborhoods with relatively few Black and Hispanic residents.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over this action under 12 U.S.C. § 5565(a)(1), 28 U.S.C. § 1331, 28 U.S.C. § 1345, 42 U.S.C. § 3614, and 15 U.S.C. § 1691e(h).

7. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) and 12 U.S.C. § 5564(f) because Hudson City conducts business and has its principal place of business in this judicial district.

## PARTIES

8. Plaintiff the Bureau is an independent agency of the United States charged with regulating the offering and provision of consumer financial products or services under Federal consumer financial laws. 12 U.S.C. § 5491(a). The Bureau has independent litigating authority to enforce Federal consumer financial laws, 12 U.S.C. § 5564(a), including ECOA. 12 U.S.C. §§ 5481(12)(D), 5481(14).

9. Plaintiff United States brings this action to enforce ECOA and FHA. The Attorney General is authorized to initiate a civil action in federal district court whenever

4

she has reasonable cause to believe that a pattern or practice of discrimination in violation of ECOA has occurred. 15 U.S.C. § 1691e(h). The Attorney General is authorized to initiate a civil action in federal district court whenever she has reasonable cause to believe that a pattern or practice of discrimination in violation of FHA has occurred or that any group of persons has been denied rights granted by FHA and such denial raises an issue of general public importance. 42 U.S.C. § 3614(a).

10. Defendant Hudson City is a federally-chartered savings bank headquartered at W. 80 Century Road, Paramus, New Jersey, 07652, offering traditional deposit products, residential real estate mortgage loans and consumer loans. Hudson City operates branches in three states: New Jersey, New York, and Connecticut. As of June 30, 2015, Hudson City had total assets of $35.4 billion. Hudson City is a wholly-owned subsidiary of Hudson City Bancorp, Inc., a savings and loan holding company.

11. Hudson City is subject to the federal laws governing fair lending, including ECOA and its implementing regulation, Regulation B, 12 C.F.R. pt. 1002, and FHA and its implementing regulations, 24 C.F.R. pt. 100.

12. Hudson City is engaged in "residential real estate-related transactions" within the meaning of FHA, 42, U.S.C. § 3605, and is a "creditor" within the meaning of ECOA, 15 U.S.C. § 1691a(e).

**FACTUAL ALLEGATIONS**

13. Hudson City engaged in unlawful redlining by structuring its business so as to avoid majority-Black-and-Hispanic neighborhoods in the NY/NJ, Camden, and Bridgeport MSAs from at least 2009-2013 ("the relevant time period"), and thereby engaging in acts or practices directed at prospective applicants that discouraged

applicants in these majority-Black-and-Hispanic neighborhoods from applying for credit, as described in the following paragraphs. A majority-Black-and-Hispanic neighborhood or area is defined as a census tract in which more than 50 percent of the residents are identified in the U.S. Census as either "Black or African American" or "Hispanic or Latino."

Branch and Broker Locations

14. Hudson City originated approximately 43,257 mortgage loans during the relevant time period. Hudson City generated approximately 80 percent of its mortgage loan applications through mortgage brokers and 20 percent through its branch network and retail loan officers.

15. Hudson City concentrated its branches so as to serve the credit needs in areas outside of, and avoid lending in, majority-Black-and-Hispanic areas.

16. Hudson City currently operates 135 branches. Based on 2010 census data, 121 (89.6 percent) of these branches were located outside of majority-Black-and-Hispanic areas.

17. Hudson City obtained its banking charter from the state of New Jersey in 1868. From the time of its original charter in 1868 until 2004, Hudson City operated under a New Jersey charter and operated branches only in New Jersey.

18. From 2004 through 2010, Hudson City expanded its presence outside of New Jersey by embarking on a "branch expansion and acquisition strategy." To carry out this expansion, Hudson City's management provided direction to explore new markets in Staten Island, Long Island, Connecticut, and parts of New York State north of New York City. These areas exclude and form a semi-circle around the four counties

in New York State with the highest proportions of majority-Black-and-Hispanic neighborhoods: Queens, Kings, Bronx, and New York Counties.

19. Between 2004 and 2010, Hudson City opened or acquired 54 branches, and has not opened a branch since. Based on 2000 census data, 51 (94.4 percent) of these branches were outside of majority-Black-and-Hispanic areas. Based on 2010 census data, 50 (92.6 percent) of these branches were located outside of majority-Black-and-Hispanic areas. *See* Exhibit A.

20. During the relevant time period, Hudson City did not accept first-lien mortgage loan applications at all of its branches, and referred potential borrowers to one of seven retail loan officers located in branches in Paramus, NJ, Cos Cob, CT, and Riverhead, NY.

21. The Paramus, NJ, Cos Cob, CT, and Riverhead, NY branches are outside of and not in proximity to majority-Black-and-Hispanic areas. These branches are located in census tracts with relatively low Black and Hispanic populations: 7.5 percent, 10.7 percent, and 16.5 percent, respectively.

22. None of Hudson City's seven retail loan officers are Black or Hispanic or can speak Spanish.

23. Hudson City was aware that its branch locations may have discouraged minorities from applying for mortgage loans. According to the Bank's Senior Vice President for Retail Banking, Hudson City did not generate applications from a neighborhood in Newark with a high Portuguese population that was not near its branches because "just going five miles in a city is like a whole other world."

24. Hudson City concentrated its broker network so as to serve the credit needs in areas outside of, and avoid lending in, majority-Black-and-Hispanic areas.

7

25. Hudson City asserts that it actively solicited brokers and knows the communities that its brokers target.

26. Hudson City's broker network is heavily concentrated outside of majority-Black-and-Hispanic areas. *See* Exhibit B.

27. Based on 2010 census data, only 12 (7.4 percent) of the 162 brokers utilized by Hudson City in the NY/NJ MSA are headquartered in majority-Black-and-Hispanic areas, despite the fact that 35.9 percent of the tracts in the NY/NJ MSA are majority-Black-and-Hispanic.

28. Based on 2010 census data, none of the 47 brokers utilized by Hudson City in the Camden MSA are headquartered in majority-Black-and-Hispanic tracts, despite the fact that 22.6 percent of tracts in the Camden MSA are majority-Black-and-Hispanic.

29. Based on 2010 census data, 94.5 percent of all office locations of Hudson City's purported top 50 brokers by loan volume in 2011 and 2012 were located outside of majority-Black-and-Hispanic areas.

30. From 2011 to 2013, only 3.7 percent of the applications generated by brokers came from majority-Black-and-Hispanic areas. Of those applications, only 18.2 percent were made by Black or Hispanic borrowers. Upon information and belief, these percentages were not substantially different in 2009 and 2010.

31. In a meeting with Bureau examiners discussing the Bank's use of brokers and lending to minorities, Hudson City's Chief Lending Officer asserted that certain brokers target "Korean, Chinese, Russian, Indian, Hassidic markets" – not mentioning Hispanic or Black consumers.

32. In a subsequent written response to the Bureau, Hudson City identified 10 brokers who it claimed served the "African American community" and "Spanish communities." Yet these identified brokers drew sparse applications from Black or Hispanic applicants. From 2011 to 2013, only 3.5 percent of the applications generated by these brokers came from majority-Black-and-Hispanic areas, of which only 14.3 percent were made by Black or Hispanic borrowers. Upon information and belief, these percentages were not substantially different in 2009 and 2010.

### CRA Assessment Area

33. Hudson City discouraged lending in majority-Black-and-Hispanic neighborhoods by excluding most of the majority-Black-and-Hispanic neighborhoods in the NY/NJ and Camden MSAs from its Community Reinvestment Act ("CRA") assessment areas.

34. Congress enacted the CRA to encourage financial institutions to "help meet the credit needs of the local communities in which they are chartered." 12 U.S.C. § 2901(b). The CRA serves as an important safeguard for minority neighborhoods that have been traditionally underserved by creditors.[2]

35. Under implementing regulations promulgated by the Office of the Comptroller of the Currency ("OCC"), a bank must "delineate one or more assessment areas within which the OCC evaluates the bank's record of helping to meet the credit needs of its community." 12 C.F.R. § 25.41(a). In other words, the CRA and its

---

[2] Plaintiffs do not have authority to enforce the CRA and do not purport to do so here. Rather, Plaintiffs cite to Hudson City's exclusion of majority-Black-and-Hispanic areas from its designated assessment area as evidence that Hudson City engaged in unlawful discrimination in violation of ECOA and FHA.

implementing regulations required Hudson City to select the geographic boundaries of "its community" whose credit needs it would help to meet, called an "assessment area."

36. The CRA also requires that a bank maintain a file available to the public that includes, among other things, "[a] map of each assessment area showing the boundaries of the area and identifying the geographies contained within the area." 12 C.F.R. § 25.43. Thus, Hudson City must make available to prospective applicants the geographic boundaries of the Bank's community.

37. From September 2011 at least through the relevant time period, the Bank included six whole counties in New York State in its assessment area: Suffolk, Putnam, Richmond, Rockland, Westchester, and Nassau.

38. This assessment area in New York State excludes and forms a semi-circle around the four counties with the highest proportion of majority-Black-and-Hispanic neighborhoods in the State: Bronx (which consists only of the New York City borough the Bronx), Queens (which consists only of the New York City borough Queens), Kings (which consists only of the New York City borough Brooklyn), and New York (which consists only of the New York City borough Manhattan) counties.

39. Twenty percent of the census tracts in the six New York State counties included in the Bank's assessment area are majority-Black-and-Hispanic, while 50 percent of the census tracts in the four excluded counties are majority-Black-and-Hispanic. By excluding these four counties, the Bank has excluded 63.4 percent of the majority-Black-and-Hispanic census tracts in the NY/NJ MSA from its assessment area, while excluding only 37.1 percent of the tracts that are not majority-Black-and-Hispanic. *See* Exhibit C.

40. Hudson City excluded Bronx, Queens, Kings, and New York counties despite generating virtually the same number of applications from them (concentrated outside of the majority-Black-and-Hispanic neighborhoods in those counties) on an annual basis as it did from all of Long Island (Suffolk and Nassau counties), one of Hudson City's most active lending areas.

41. Despite Hudson City's willingness to accept mortgage loan applications in large numbers in the four excluded counties, residents of these counties were not eligible for discounted home improvement loans that the Bank offered to borrowers with low-to-moderate incomes.

42. Moreover, advertisements for this discounted home improvement loan program specified that loan closings must occur at one particular branch -- in Fairfield, CT. The town of Fairfield has a Black and Hispanic population of only 6.5 percent.

43. In delineating this assessment area in New York State, Hudson City included Richmond County (which consists only of the New York City borough Staten Island). Staten Island has the lowest proportion of majority-Black-and-Hispanic census tracts of the five New York City boroughs.

44. Prior to September 2011, when the Bank added Nassau County to its assessment area, the Bank excluded 66.7 percent of the majority-Black-and-Hispanic census tracts in the NY/NJ MSA from its assessment areas, while excluding only 45 percent of the tracts that are not majority-Black-and-Hispanic.

45. Hudson City's assessment area in the Camden MSA excludes all 337 majority-Black-and-Hispanic census tracts. Hudson City accomplished this by excluding specific tracts in New Jersey and all counties in Pennsylvania from its assessment area. In doing so, Hudson City excluded the heavily Black and Hispanic cities of Camden

11

(48.1 percent Black and 44.4 percent Hispanic) and Philadelphia (43.4 percent Black and 11.3 percent Hispanic). *See* Exhibit D.

46. Hudson City excluded these census tracts despite generating over 4,000 applications from the Camden MSA over the relevant time period, primarily from the suburban areas of Philadelphia with low proportions of majority-Black-and-Hispanic areas.

47. This pattern of excluding from its assessment areas more heavily Black and Hispanic urban areas occurred outside of the NY/NJ and Camden MSAs as well. In the Atlantic City-Hammonton MSA, which contains only Atlantic County in New Jersey, Hudson City did not include Atlantic City. Atlantic City has a Black population of 38.3 percent and a Hispanic population of 27.6 percent, while the tracts in Atlantic County that Hudson City included in its assessment area contain substantially lower Black and Hispanic populations of 10.3 percent and 9.8 percent, respectively.

## Marketing

48. Throughout the relevant time period, Hudson City marketed principally through newspaper advertisements. Hudson City has significantly reduced its marketing efforts during the relevant time period.

49. Hudson City engaged in limited marketing outside of its branch network, and therefore failed to advertise meaningfully in majority-Black-and-Hispanic neighborhoods.

50. While marketing efforts were reduced on an overall basis, Hudson City made a strategic marketing initiative to focus on Suffolk County, New York.

51. Suffolk County has a lower proportion of majority-Black-and-Hispanic neighborhoods (12.4 percent) than any county in New York City and Long Island.

52.     Hudson City further allocated marketing resources towards building an online presence in Fairfield, Westchester, Bergen, Middlesex, and Somerset Counties, where collectively only 20 percent of the census tracts are majority-Black-and-Hispanic.

<u>Applications from Majority-Black-and-Hispanic Neighborhoods</u>

53.     From at least 2009 to 2013, the Bank's policies and practices directed at prospective applicants, including but not limited to its branch and broker locations, assessment area delineation, and marketing practices have discouraged prospective applicants in majority-Black-and-Hispanic neighborhoods and resulted in relatively few mortgage loan applications from majority-Black-and-Hispanic neighborhoods in the NY/NJ, Camden, and Bridgeport MSAs. *See* Exhibit E.

54.     Analysis of Hudson City's mortgage applications in these MSAs as compared to its peers showed disparities in lending to majority-Black-and-Hispanic neighborhoods between Hudson City and its peers. These disparities are statistically significant and show that there were applicants seeking mortgage loans in majority-Black-and-Hispanic areas in these MSAs. These disparities further show that Hudson City had no legitimate, non-discriminatory reason to draw relatively few applications from these majority-Black-and-Hispanic areas.

55.     During the relevant time period, Hudson City drew 40,213 mortgage loan applications in the NY/NJ MSA. Only 1,932 (4.8 percent) were for properties in majority-Black-and-Hispanic areas, even though 35.9 percent of the MSA's tracts are majority-Black-and-Hispanic.

56.     While Hudson City generated only 4.8 percent of its applications from majority-Black-and-Hispanic tracts in the NY/NJ MSA during the relevant time period, the Bank's peers generated 13.2 percent – nearly three times that of Hudson City.

13

57. While Hudson City drew only 1.5 percent of its applications from census tracts in the NY/NJ MSA in which more than 80 percent of the residents are identified in the U.S. Census as either "Black or African American" or "Hispanic or Latino" (high-Black-and-Hispanic areas) during the relevant time period, the Bank's peers generated 6.6 percent – 4.5 times that of Hudson City.

58. During the relevant time period, Hudson City drew 4,243 mortgage loan applications in the Camden MSA. Only 34 (0.8 percent) were from majority-Black-and-Hispanic areas, even though 22.6 percent of the MSA's tracts are majority-Black-and-Hispanic.

59. While Hudson City generated only 0.8 percent of its applications from majority-Black-and-Hispanic tracts in the Camden MSA during the relevant time period, the Bank's peers generated 8.3 percent – more than 10 times that of Hudson City.

60. While Hudson City drew only 0.1 percent of its applications from high-Black-and-Hispanic areas in the Camden MSA during the relevant time period, the Bank's peers generated 4.4 percent – nearly 31 times that of Hudson City.

61. During the relevant time period, Hudson City drew 8,011 mortgage loan applications in the Bridgeport MSA. Only 132 (1.6 percent) were from majority-Black-and-Hispanic areas, even though 24.6 percent of the MSA's tracts are majority-Black-and-Hispanic.

62. While Hudson City generated only 1.6 percent of its applications from majority-Black-and-Hispanic tracts in the Bridgeport MSA during the relevant time period, the Bank's peers generated 7.6 percent – more than four-and-a-half times that of Hudson City.

63. While Hudson City drew only 0.2 percent of its applications from high-Black-and-Hispanic areas in the Bridgeport MSA during the relevant time period, the Bank's peers generated 2.0 percent – 8.5 times that of Hudson City.

<u>Failure to monitor for redlining</u>

64. Throughout the relevant time period, Hudson City failed to exercise adequate oversight or hire sufficient staff to ensure compliance with its fair lending obligations.

65. Hudson City's fair lending policy consisted only of a statement asserting that it is an equal opportunity lender. The Bank employed no written policies or procedures to monitor for compliance with its fair lending obligations.

66. Throughout the relevant time period and to-date, Hudson City did not monitor its brokers for redlining. In 2012, the Bureau recommended that Hudson City begin monitoring at least its top 10 brokers by loan volume; Hudson City failed to do so.

67. In 2009 and 2010, Hudson City employed only one compliance officer.

68. In April 2011, Hudson City hired a Chief Compliance Officer and created approximately 12 other compliance positions, but Hudson City failed to fill 6 of the positions at least through 2011. In March 2013, the Chief Compliance Officer and most compliance staff left Hudson City, and to-date Hudson City has not filled these compliance positions.

69. In sum, the totality of Hudson City's policies and practices described herein constitutes the redlining of majority-Black-and-Hispanic areas of the NY/NJ, Camden, and Bridgeport MSAs. Hudson City's policies and practices are intended to deny and discourage, or have the effect of denying or discouraging, an equal opportunity to the residents of the majority-Black-and-Hispanic areas of the NY/NJ, Camden, and

15

Bridgeport MSAs, on the basis of the racial and ethnic composition of those neighborhoods, to obtain residential mortgage loans. These policies and practices are not justified by business necessity or legitimate business considerations.

## EQUAL CREDIT OPPORTUNITY ACT VIOLATION

70. Hudson City's policies and practices constitute the unlawful redlining of Black and Hispanic communities in the NY/NJ, Camden, and Bridgeport MSAs. Hudson City's acts and practices directed at prospective applicants discouraged applicants from applying for credit on the basis of race, color, and national origin in violation of Regulation B and ECOA. 12 C.F.R. § 1002.4(b); 15 U.S.C. § 1691(a)(1).

71. Hudson City discriminated against applicants with respect to credit transactions on the basis of race, color, and national origin in violation of ECOA, 15 U.S.C. § 1691(a)(1).

72. Hudson City's practices constitute a pattern or practice of discrimination and discouragement in violation of ECOA, 15 U.S.C. § 1691(a)(1).

73. Hudson City's discriminatory policies and practices have been intentional and willful, and implemented with reckless disregard for the rights of Black and Hispanic applicants under ECOA.

## FAIR HOUSING ACT VIOLATION

74. Hudson City's residential real estate-related lending policies and practices as alleged herein constitute:

  a. Discrimination on the basis of race, color, or national origin in making available, or in the terms or conditions of residential real estate-related transactions, in violation of FHA, 42 U.S.C. § 3605(a);

  b. The making unavailable or denial of dwellings to persons because of race, color, or national origin in violation of FHA, 42 U.S.C. § 3604(a);

  c. Discrimination on the basis of race, color, or national origin in the terms, conditions, or privileges of the provision of services or facilities in connection with the sale or rental of dwellings, in violation of FHA, 42 U.S.C. § 3604(b);

  d. A pattern or practice of resistance to the full enjoyment of rights secured by the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*; and

  e. A denial of rights granted by the Fair Housing Act to a group of persons that raises an issue of general public importance.

  75. Hudson City's discriminatory policies and practices have been intentional and willful, and implemented with reckless disregard for the rights of Black and Hispanic borrowers or potential borrowers under FHA.

## CONSUMER INJURY

  76. Persons who have been victims of Hudson City's discriminatory policies and practices are aggrieved persons as described in ECOA, 15 U.S.C. § 1691(e)(i), and as defined in FHA, 42 U.S.C. § 3602(i), and have suffered substantial injury as a result of Hudson City's conduct in violation of FHA and ECOA, as alleged herein.

## THIS COURT'S POWER TO GRANT RELIEF

  77. ECOA empowers this Court to grant such relief as may be appropriate, including actual and punitive damages and injunctive relief. 15 U.S.C. §§ 1691c(a)(9), 1691e(h).

  78. FHA empowers this Court to grant legal or equitable relief necessary to ensure the full enjoyment of the rights granted by FHA, including a temporary or

permanent injunction, restraining order, and monetary damages to aggrieved persons. 42 U.S.C. § 3614(d).

79. The Consumer Financial Protection Act empowers this Court to grant any appropriate legal or equitable relief including, without limitation, a permanent or temporary injunction, rescission or reformation of contracts, the refund of moneys paid, restitution, disgorgement or compensation for unjust enrichment, monetary relief, and civil money penalties, to prevent and remedy any violation of any provision of law enforced by the Bureau. 12 U.S.C. § 5565.

## **PRAYER FOR RELIEF**

WHEREFORE, the Bureau prays that the Court enter an ORDER that:

(1) Declares that the challenged policies and practices of Hudson City constitute violations of ECOA and FHA;

(2) Enjoins Hudson City, its agents, employees, successors, and all others in active concert or participation with the Bank, from:

(a) Discriminating in any aspect of its lending business on the basis of race, color, or national origin;

(b) Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of Hudson City's unlawful conduct to the position they would have been in but for the discriminatory conduct; and

(c) Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any such discriminatory conduct in the future; to eliminate, to the extent practicable, the effect of Hudson City's unlawful practices; and to implement policies and procedures to ensure that all applicants have an equal opportunity to seek and obtain mortgage loans on a non-discriminatory basis and with non-discriminatory

terms and conditions;

(3) Awards monetary damages to all the victims of defendants' discriminatory policies and practices for the injuries caused by defendants, pursuant to 15 U.S.C. §§ 1691c(a)(9) and 1691e(h) and 42 U.S.C. § 3614(d)(1)(B); and

(4) Assesses a civil money penalty against Hudson City in an amount authorized by 12 U.S.C. § 5565(c) and 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest.

Plaintiffs pray for such additional relief as the interests of justice may require.

Dated: September 24, 2015

Respectfully submitted,

LORETTA E. LYNCH
Attorney General

| | |
|---|---|
| VANITA GUPTA<br>Principal Assistant Attorney General<br>Civil Rights Division | PATRICE ALEXANDER FICKLIN<br>Fair Lending Director |
| STEVEN H. ROSENBAUM<br>Chief | REBECCA J. K. GELFOND<br>Deputy Fair Lending Director |
| JON S. SEWARD<br>Deputy Chief | *s/Michael Posner*<br>JEFFREY BLUMBERG<br>Senior Fair Lending Enforcement Counsel<br>MICHAEL POSNER<br>Fair Lending Enforcement Counsel |
| *s/Ronald H. Lee*<br>RONALD H. LEE<br>Trial Attorney<br>United States Department of Justice<br>Civil Rights Division<br>Housing and Civil Enforcement Section<br>950 Pennsylvania Avenue, N.W.<br>Northwestern Building, 7th Floor<br>Washington, DC 20530<br>Tel: (202) 616-1892 | CHARLES NIER<br>Senior Counsel<br>Consumer Financial Protection Bureau<br>1700 G Street NW<br>Washington, DC 20552<br>Tel: (202) 435-7866 |

PAUL J. FISHMAN
United States Attorney
District of New Jersey

*s/Michael E. Campion*
MICHAEL E. CAMPION
Assistant United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
Tel. (973) 645-3141